RECEIVED
IN ALEXANDRIA

OCT 2 2 2009

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **FRANKIE BELL**<br>     **FED. REG. #00146-099**<br>**VS.** | **CIVIL ACTION NO. 09-0222**<br><br>**SECTION P**<br><br>**JUDGE DRELL** |
| **WARDEN JOE KEFFER** | **MAGISTRATE JUDGE KIRK** |

**REPORT AND RECOMMENDATION**

On February 5, 2009, *pro se* petitioner Frankie Bell filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2241. Petitioner is an inmate in the custody of the Federal Bureau of Prisons (BOP). He is incarcerated at the United States Penitentiary, Pollock (USPP), Louisiana, and, he complains that on July 17, 2007, while he was incarcerated at the Federal Corrections Institute, Beaumont, Texas,  his due process rights were violated in a prison disciplinary proceeding due to procedural irregularities that resulted in the forfeiture of good time credits.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** for failing to state a claim for which relief may be granted.

1

### Statement of the Case

In June 2007 petitioner was an inmate at the Federal Corrections Institute, Beaumont, Texas. On June 11, 2007, L. Hawkins, the Unit Secretary, noticed petitioner through the door window of the Assistant Warden's area. Petitioner was standing in the hall and when Hawkins looked at him, petitioner had his left hand in his left pocket and she observed "movement in his pocket" which she described as an up and down motion. Whenever Ms. Hawkins would move, petitioner would reposition himself to keep her in his line of sight. Hawkins attempted to confront petitioner, but he left the scene. He was identified and returned to the area where Ms. Hawkins was located and when he was asked to identify himself he gave a false name, a false unit, and a false prisoner number. When Ms. Hawkins attempted to verify his identity, she discovered that petitioner had provided false information. She then went through the "bed book cards" and identified petitioner as the inmate she had observed on June 11, 2007. She prepared an incident report charging petitioner with engaging in a sexual act and lying to staff. [rec. doc. 10, Exhibit 1, Attachment 1, p. 27]

The Incident Report was delivered to petitioner on June 12, 2007. [rec. doc. 10, Exhibit 1, ¶2] Petitioner was placed in Administrative Segregation pending further investigation. [Id., ¶3] On June 14 the Unit Discipline Committee (UDC) conducted a

2

preliminary hearing and served petitioner with a copy of Inmate

Rights at Discipline Hearing and Notice of Discipline Hearing

Before the Disciplinary Hearing Officer. Petitioner indicated on

the latter document that he did not want staff representation or

witnesses. [Id., ¶4; see also Attachments 2 and 3]

The DHO hearing was convened on July 17, 2007. Petitioner

denied the charge, stating that he was not the inmate observed by

Ms. Hawkins, that he was not left-handed, and that he was in

another unit when the incident occurred. The DHO considered the

testimony of Ms. Hawkins and determined that petitioner was

guilty of the sexual offense. He dismissed the lying to staff

charge. The following relevant findings were made by the DHO:

> I also considered Ms. Hawkins' testimony during the DHO
> hearing. I called her to the hearing to verify you were
> indeed the inmate she identified. Ms. Hawkins testified
> she is positive you were the inmate described in the
> incident report. Ms. Hawkins also stated she is certain
> you were masturbating your penis with your left hand in
> your pocket when she saw you looking at her through the
> window.

> I also considered your statements to me during the DHO
> hearing. Specifically you denied the charge and stated
> you were in PB Unit when this occurred. You also state
> you were not left handed so you could not be the inmate
> seen by Ms. Hawkins. You requested Officer Crittle to
> verify you were in the unit when this occurred.
> However, Mr. Crittle provided a written response to
> your written questions posed to her. She could not
> verify speaking with you in the unit around the time of
> this incident. You also requested Inmate Brooks testify
> that PB Unit was released last for lunch on the day of
> the incident to establish you could not have been in
> the AW's area. Inmate Brooks appeared and testified he
> did believe PB Unit was released last on June 11, 2007.
> However, this hearing was held over one month after the

3

incident. I find it highly unlikely that inmate Brooks
would remember when the unit was released for a
specific meal over a month ago.

Prior to this hearing you also told me you wanted the
Captain to verify speaking with you at Mainline on June
11, 2007. Capt. Quesenbury provided a written statement
indicating he remembers speaking with you recently but
does not recall when or where. [rec. doc. 10, Exhibit
1, Attachment 4][1]

Based on those findings, petitioner was found guilty and

sentenced to forfeit 27 days of good time and other lesser

sanctions. [*Id.*]

Petitioner's appeals at the local, regional, and national

levels were ultimately rejected. [rec. doc. 10, Exhibit 1,

Attachments, 5-19][2]

### *Law and Analysis*

Petitioner implies that he was deprived of liberty – the

---

[1] The DHO also rejected petitioner's procedural objections. Petitioner
objected that the incident report was written the day after the incident,
however, the DHO reminded him that he was not identified as the perpetrator
until the day after the incident and he was provided a copy of the report
within 2 hours after the complainant made a positive identification of
petitioner as the perpetrator. The DHO also rejected petitioner's complaint
concerning the change in Code violation numbers. The DHO noted that this was
due to a typographical error and the correction of the error did not prejudice
petitioner's ability to mount a defense. Further, the DHO noted that the
offense in question – lying to an officer – was ultimately dismissed. [rec.
doc. 10, Exhibit 1, Attachment 4]

[2] The Regional Administrator addressed petitioner's claim that lines
missing from the DHO report hindered his ability to obtain review. In
rejecting this allegation, the Regional Administrator noted, "The two lines
missing from your DHO report were verbatim from Section 11 of your incident
report...You were provided a corrected DHO Report on July 30, 2007. The
missing information did not impede you from preparing an effective appeal."
[rec. doc. 10, Exhibit 1, Attachment 17]

loss of 27 days good conduct time – in violation of the Fifth
Amendment's due process clause. With regard to his due process
claim, federal prisoners do have liberty interests in their
accumulated good-time credit. See Henson v. U.S. Bureau of
Prisons, 213 F.3d 897, 898 (5th Cir.2000). Therefore, since
petitioner lost good time credits as a result of the complained
of disciplinary proceeding, the due process analysis approved by
the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct.
2963, 41 L.Ed.2d 935 (1974) and Superintendent, Massachusetts
Correctional Institution v. Hill, 472 U.S. 445, 105 S.Ct. 2768,
86 L.Ed.2d 356 (1985), governs this review the contested
disciplinary proceeding.

In Wolff, the Court held, although the rights of a prisoner
"...may be diminished by the needs and exigencies of the
institutional environment, a prisoner is not wholly stripped of
constitutional protections when he is imprisoned for crime."
Nevertheless "[p]rison disciplinary proceedings are not part of a
criminal prosecution, and the full panoply of rights due a
defendant in such proceedings does not apply." Id. at 555- 556.
Accordingly, in order for a prison disciplinary proceeding to
comport with the requirements of due process the following
minimal procedural safeguards must be afforded:  (1) adequate
notice of the alleged violation; (2)  an opportunity to present
evidence, (3) written findings in support of the ruling; and

5

(4) the requirement that upon review, "some evidence" support the ruling. <u>Superintendent, Massachusetts Correctional Institution v.</u> <u>Hill</u>, 472 U.S. 445, 454, 105 S.Ct. 2768, 86 L. Ed.2d 356 (1985); <u>Wolff</u>, *supra*, at 556.

Petitioner has provided copies of the BOP's Discipline Hearing Officer Report, Incident Report, Inmate Rights at Discipline Hearing, and Notice of Discipline Hearing with respect to the incident he now contests.  These exhibits establish that he was afforded all the process he was due. Further, the DHO's findings establish that there was ample evidence of guilt.

In short, petitioner has failed to state a claim for which relief may be given. His claims are without merit and dismissal on that basis is appropriate.[3]

### Conclusion

Considering the foregoing,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** for failing to state a claim for which relief might be granted.

---

[3] On July 31, 2007 petitioner was transferred to USP Beaumont. [rec. doc. 10, Exhibit 1, ¶62] Petitioner also complains that corrections officials at the USP Beaumont refused to provide him with a *habeas corpus* form and with the address of the United States Courthouse in Beaumont, Texas, and, thus, he was prohibited from filing a *habeas corpus* petition seeking review of the disciplinary proceedings. [Id., ¶90-92] In order to be entitled to *habeas corpus* relief, a petitioner must show that he is in custody in violation of the Constitution and laws of the United States. See 28 U.S.C. §2241. Petitioner's allegations, if true, are troubling, however, standing alone, they do not establish a Constitutional violation since petitioner's opportunity to litigate his *habeas* claims was merely delayed and not denied, and petitioner suffered no prejudice as a result of the delay.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this Recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).

Signed in Chambers, Alexandria, Louisiana, _____, 2009.

_____
JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE

7